**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3479
_____

SALVADOR AJUALIP,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A099 939 366)
Immigration Judge: Charles M. Honeyman

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 2, 2010

Before: AMBRO, CHAGARES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(Opinion filed    June 11, 2010 )
_____

OPINION
_____

PER CURIAM

        Petitioner Salvador Ajualip, a citizen of Guatemala, seeks review of a final order

issued by the Board of Immigration Appeals ("BIA").  For the reasons that follow, we

will deny the petition for review.

Because the parties are familiar with the background, we will present it here only in summary. Ajualip entered the United States in 1999 without being admitted or paroled. He was charged with removability in 2007. Ajualip conceded removability but sought withholding of removal and protection under the Convention Against Torture ("CAT").[1] At the hearing on his claims before the Immigration Judge ("IJ"), Ajualip testified in support of his claims, stating that he left Guatemala because he was poor, and he came to the United States to work and provide financial support for his family. His family owned and maintained two farms in Guatemala, and he sent his family money to buy livestock. He stated that he feared returning to Guatemala because the "delinquents" in his country know that he is in the United States and sends his family money, so he would be perceived as having wealth. He personally did not have any trouble in Guatemala beyond poverty, but his father-in-law was killed in 1998, by unknown assailants, because he had a store and was perceived to have money. Then, in recent years, several neighbors in his community in Guatemala were also killed, and one of those neighbors also had a store and was killed for the same reason. The police investigations did not result in any arrests. In his written statement in support of his application for relief, Ajualip explained that the delinquents will surmise that he is wealthy because he has lived in the United States for a

---

[1] Ajualip had submitted an application for asylum relief, but through counsel he conceded that he was ineligible for asylum due to his failure to apply within one year of his arrival in the United States. He thus withdrew his asylum request and proceeded only on the withholding and CAT claims.

number of years and because of his farm and farm animals. He stated his fear, that if he were to return to Guatemala, the delinquents would assault him, demand money, and kill him if he refused to comply. Ajualip also presented other documents to support his claim, including reports on gang-based violence in Central America and the 2007 Department of State Country Report on Guatemala.

The IJ found that Ajualip testified credibly. Concerning withholding of removal, the IJ found that Ajualip failed to establish a clear probability that he would be harmed on account of membership in a particular social group, namely, a group of individuals who return to Guatemala from the United States and who have had relatives killed or threatened by delinquents. The IJ determined that the group as defined by Ajualip was not cognizable for asylum and withholding purposes. The IJ also found that Ajualip had not met his burden of proof on his CAT claim, noting that Ajualip asserted no fear of harm by state actors and made no argument that the government would acquiesce in any harm by non-state actors, even assuming that any such harm would rise to the level of torture. On the point of government acquiescence, the IJ noted the evidence that the police did investigate the crimes related by Ajualip. Accordingly, the IJ denied Ajualip's applications for relief and ordered his removal to Guatemala, but granted voluntary departure.

The BIA dismissed Ajualip's appeal. The BIA agreed with the IJ's conclusions that Ajualip had not established past persecution or a well-founded fear of future

persecution on account of any protected ground. Specifically, the BIA agreed with the finding that Ajualip did not demonstrate membership in a particular social group within the meaning of 8 U.S.C. § 1101(a)(42)(A), noting that the group consisting of victims of delinquents or gang-related extortion is overly broad, is not defined with sufficient particularity, lacks social visibility, and is not marked by a common immutable characteristic. Moreover, the BIA concluded that, to the extent that Ajualip feared harm in Guatemala based on generally dangerous conditions, such fear did not amount to a well-founded fear of persecution, let alone a clear probability of persecution. Thus, the BIA found that Ajualip did not establish his eligibility for withholding of removal. Finally, the BIA agreed with the IJ's determination regarding Ajualip's CAT claim, noting that the described events did not constitute a basis for a finding of likelihood of torture at the instigation of, or with the acquiescence or wilful blindness of, the Guatemalan government.

Ajualip timely filed a petition for review in this Court. We have jurisdiction under 8 U.S.C. § 1252. The BIA agreed with the IJ's decision and added its own reasoning. Thus, we review the decisions of both the IJ and the BIA. See Sandie v. Att'y Gen., 562 F.3d 246, 250 (3d Cir. 2009). We review the agency's factual determinations under the substantial evidence standard. See id. at 251. The agency's findings are considered conclusive unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We exercise de novo review over the agency's

4

legal decisions.  See Sandie, 562 F.3d at 251.

A claim for withholding of removal is based upon 8 U.S.C. § 1231(b)(3)(A), which forbids removal if the alien's life or freedom would be threatened on account of a protected ground, namely, his or her race, religion, nationality, membership in a particular social group, or political opinion.  In comparison, a CAT claim need not require a showing that torture would be inflicted on account of a protected ground.  See Ambartsoumian v. Ashcroft, 388 F.3d 85, 89 (3d Cir. 2004) (citing 8 C.F.R. § 1208.16(c)(2) and Lukwago v. Ashcroft, 329 F.3d 157, 183 (3d Cir. 2003)).  For both types of claims, the alien must show that the harm is "more likely than not" to occur if removed to the alien's country.  See Ambartsoumian, 388 F.3d at 89.

We first consider which of Ajualip's claims are properly before us for review.  The government argues that Ajualip has waived any argument concerning withholding relief because the claim is not adequately raised and argued in Ajualip's opening brief.  We agree.  The summary of the argument, argument, and conclusion sections of Ajualip's brief frame his claim in terms of protection under the CAT, focusing on the issue of whether the Guatemalan government acquiesces to the infliction of torture.  Although Ajualip makes passing references to his having met his burden of proof regarding persecution on account of a protected ground, we find that these references are insufficient to challenge the agency's determination on his withholding claim.  This is especially so because Ajualip now argues past persecution on account of his family

5

membership–a contention that was not raised before the agency. Rather, Ajualip's argument for withholding of removal was based on his fear of future persecution due to the perception that he is wealthy. We thus deem the withholding issue waived and will not address it. See Lie v. Ashcroft, 396 F.3d 530, 532 n.1 (3d Cir. 2005). See also 8 U.S.C. § 1252(d)(1) (court may review final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right"); Abdulrahman v. Ashcroft, 330 F.3d 587, 594-95 (3d Cir. 2003) (petitioner must "raise and exhaust his . . . remedies as to each claim or ground for relief if he . . . is to preserve the right of judicial review of that claim").

We now turn to Ajualip's argument that he established his eligibility for CAT protection. Ajualip challenges the agency's determination that the record does not indicate acquiescence or wilful blindness by the Guatemalan government to any torture inflicted by delinquents or gangs. He argues that the BIA and IJ committed legal error in focusing exclusively on the national government's acquiescence without considering the acquiescence by local authorities. Ajualip does not identify the local authorities at issue in his argument, but we discern no legal error and conclude that substantial evidence supports the agency's finding. There is nothing in the decisions that reflects consideration of acquiescence by national officials only. The BIA expressed agreement with the IJ's conclusion regarding acquiescence and wilful blindness of a government official, and the IJ relied in part on the evidence that the police did conduct an

6

investigation of the killings described in Ajualip's testimony.[2]  In sum, the record does not compel the conclusion that the torture feared is government-sponsored, as Ajualip asserts.  We conclude that the agency's decision regarding CAT relief is supported by substantial evidence.[3]

We will deny the petition for review

---

[2] The police were not identified as national police or local police in Ajualip's testimony, but Ajualip testified that the police were always summoned by the individual who governed the community, and that the crimes were duly investigated.

[3] Ajualip states that "neither the IJ nor the BIA disputed" that it was more likely than not that he would be tortured if removed, and the only point in dispute is government acquiescence.  Pet. Br. at 10.  To the extent that Ajualip asserts that the agency made a finding that a clear probability of torture exists, we disagree with Ajualip's reading of the agency decisions.  Our decision remains the same, in any event.